Argued December 19, 1917, affirmed January 15, 1918.

CROWE *v.* ALBEE, MAYOR.

(169 Pac. 785.)

</div>

**Evidence—Judicial Notice—City Charters.**

1. Under Laws of 1917, page 514, courts are required to take judicial notice of a city charter after a duly certified copy thereof has been filed with the librarian of the Supreme Court.

**Municipal Corporations—Discharge of Officers—Review.**

2. Under Portland City Charter 1914, Chapter 4, Section 62, providing for suspending of city officers by the mayor, and Sections 98, 100, 101, 108, and 114, establishing a civil service board before whom an officer removed may demand a hearing, and giving the board power to subpoena and compel the attendance of witnesses, etc., and to reinstate officers or affirm dismissal, the board when so acting is a *quasi*-judicial tribunal, whose judgment and discretion will not be interfered with by the courts, but whose acts will be reviewed to see if they conform to the provisions of the statutes conferring such power.

Municipal Corporations—Officers—Civil Service Board—Hearing on
    Discharge.

3.   The civil service board, upon hearing an appeal from officer dis-
missed, is confined to determination of the questions of the dismissal
being for political or religious reasons, or whether in good faith for the
improvement of the service, and the officer must sustain the burden
of proof, under Portland City Charter 1914, Chapter 4, Section 108;
and where, without written findings, a conclusion of law commuting the
sentence of dismissal to suspension is made, it will be presumed the
charges were sustained.

Courts—Orders Nunc Pro Tunc.

4.   An order for a *nunc pro tunc* entry of findings not stating what
conclusion of fact or law had been theretofore made is insufficient,
and such entry must neither add to nor take from the original.

Municipal Corporations—Civil Service Board—Review—Rehearing.

5.   A civil service board acting as a *quasi*-judicial tribunal for de-
termining whether an officer was properly removed cannot grant a
rehearing, unless specifically authorized by law.

   [As to removal of officers for cause, see note in 135 Am. St. Rep.
   250.]

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 2.   Statement by MR. JUSTICE MOORE.

   This proceeding was instituted December 9, 1915,
in the Circuit Court of Multnomah County by M. E.
Crowe against H. R. Albee, the then mayor of the City
of Portland, Oregon, to compel the reinstatement of
the plaintiff as a member of the police force of that mu-
nicipality, from which he had been dismissed by the de-
fendant.   An alternative writ of *mandamus* was issued
stating in effect that the City of Portland is a duly
organized municipal corporation; that the defendant
was the mayor thereof, and by the charter had the
appointment and supervision of the police department
and of the employees engaged therein; that on Novem-
ber 30, 1914, the plaintiff was and for several years
prior thereto had been regularly and permanently
appointed a patrolman as a member of the police de-
partment of that city, under the classified civil service
rules at a monthly salary of $100; that on November

30, 1914, he was removed and discharged from the service by the defendant; that within ten days therefrom the plaintiff filed with the civil service board of that city a written demand for an investigation of his removal, alleging that his dismissal was for political or religious reasons, and not for the purpose of improving the public service; that at a meeting of such board held January 14, 1915, an investigation pursuant to such demand was had and evidence was submitted by the plaintiff and defendant; that on February 18, 1915, at a regular meeting of the board when were present two of the three members thereof, an order was made, the material part of which reads:

"That after having carefully considered all of the evidence presented in this case, it was found that the evidence presented on behalf of policeman Crowe's condition, warranted enough consideration to justify the following verdict, to-wit: That Mr. Crowe be suspended from the service from the date of his discharge, November 30, 1914, until May 1, 1915, and that an order be entered that he report for duty on May 1st aforesaid,"

of which order the plaintiff and defendant were duly notified; that on May 1, 1915, and on the first day of each subsequent month, the plaintiff presented himself for service and demanded of the defendant that he be reinstated at the monthly compensation he had been receiving, but such offer and request were refused; that on October 27, 1915, at a regular meeting of the civil service board, another order was made, relating to the application of the plaintiff for reinstatement, reciting the proceedings that were had and the conclusion reached at the original hearing, stating that the patrolman was discharged at the recommendation and upon the complaint of the chief of police

"of neglect of duty and conduct unbecoming an officer"; that the dismissal "was not made in good faith for the purpose of improving the public service; that it is to the benefit of public service to reinstate the said M. E. Crowe to his said position; that the said M. E. Crowe is entitled to reinstatement upon the following conditions; that he be reinstated and his said position restored to him as of date May 1, 1915, with pay from said date but that he be suspended during the interim. * * Inasmuch as the minutes of the board's proceedings held at its meeting February 18, 1915, do not state completely and accurately the board's then findings and order of that date in said matter, it is further ordered that these findings, order and proceedings be entered of record as of February 18, 1915."

The alternative writ further states that on November 20, 1915, due service of the latter order was accepted by the defendant, of whom the plaintiff on December 1st of that year, demanded restoration to the position of patrolman, but his application was denied; and that by reason of such order it was the duty of the defendant to reinstate the plaintiff who had no plain, speedy or adequate remedy at law for the relief sought.

A demurrer to the writ on the ground that it did not state facts sufficient to entitle the plaintiff to the restoration demanded was sustained, the proceedings dismissed and plaintiff appeals.     AFFIRMED.

For appellant there was a brief with oral arguments by *Mr. William A. Carter* and *Mr. Nelson R. Jacobson.*

For respondent there was a brief over the names of *Mr. Walter P. La Roche,* City Attorney, and *Mr. Stanley Myers,* Deputy City Attorney, with an oral argument by *Mr. Myers.*

MR. JUSTICE MOORE delivered the opinion of the court.

1, 2. There has been filed with the librarian of this court a duly certified copy of the charter of the City of Portland, of which organic act judicial notice is required to be taken: Chap. 273, Gen. Laws Or. 1917. Instead of using such duplicate, reference to sections thereof will be made to the charter, as revised by the council of that municipality August 19, 1914, and printed in pamphlet form. Thus the civil service board shall consist of three commissioners to be appointed by the mayor: Chap. IV, § 98. This board is required to classify offices, places and employments of the public service, and such positions when so arranged shall constitute the classified service of the city: Id., § 100.

"The Board shall make rules to carry out the purposes and provisions of this Article, which rules shall provide, in detail, the manner in which examinations shall be held, and appointments, promotions and removals made in pursuance thereof; and the board may, from time to time, change its rules": Id., § 101.

"The Mayor shall have the power to suspend, pending an official investigation, any officer of the city, except councilmen, for any official defalcation or willful neglect of duty, or official misconduct": Section 62.

"No employee in the classified civil service who shall have been permanently appointed under the provisions of this article shall be removed or discharged except for cause, a written statement of which, in general terms, shall be served upon him and a duplicate filed with the Board. Such removal or discharge may be made without any trial or hearing. Any employee so removed may within ten days from his removal file with the Board a written demand for investigation. If such demand shall allege, or if it shall otherwise appear to the Board that the discharge or removal was for political or religious reasons, or was not in good faith, for the purpose of improving the public

service the matter shall forthwith be investigated by or before the Board, or by or before some officer or board appointed by the Board to conduct such investigation.   The investigation shall be confined to the determination of the question of whether such removal or discharge was or was not for political or religious reasons, or was or was not made in good faith for the purpose of improving the public service.   The burden of proof shall be upon the discharged employee. On such grounds the Board may find that the employee so removed is entitled to reinstatement upon such conditions or terms as may be imposed, by the Board, or may affirm his removal.   The findings of the Board, or such officer or board, when approved by the Board, shall be certified to the appointing officer and shall be forthwith enforced by such officer'': Section 108.

The civil service board in the course of any investigation has power to subpoena witnesses, compel their attendance, administer oaths, examine into books, records, etc., and to compel their production.

''Willful false swearing in such investigations and examinations shall be perjury and punishable as such'': Id., § 114.

If any rules were ever established by the civil service board, relating to examinations before it, no mention thereof is made in the writ, nor does that alternative command specify what written charges preferred against the plaintiff by the chief of police and addressed to the mayor, constituted on the part of the patrolman ''neglect of duty and conduct unbecoming an officer.''

It will be remembered that Section 108 of Chapter IV of the charter limits the investigation of the civil service board to a consideration of whether the removal of any person from the classified service was for political or religious reasons, or was not made in good faith for the purpose of improving the public service,

and that the burden of proof in such examination is imposed upon the discharged employee.

In *Imperial Water Co.* v. *Board of Supervisors,* 162 Cal. 14, 17 (120 Pac. 780), in speaking of the authority of a board of supervisors of a county in California, it is said:

"It does not follow, however, that where the legislature delegates such power to a local board and provides that it can be exercised only upon certain conditions and upon the ascertainment of certain facts by such board, after a notice and hearing to parties interested, that the proceeding thus authorized is not of a judicial character. Although such boards do not have the character of an ordinary court of law or equity, they frequently are required to exercise judicial functions in the course of the duties enjoined upon them."

In a note to the case of *Wulzen* v. *Board of Supervisors,* 40 Am. St. Rep. 17, 45 (101 Cal. 15, 35 Pac. 353), in speaking of removals from office, the editor of that valuable series of reports, remarks:

"Perhaps the clearest and best established illustration of the fact that an act not essentially judicial may be made so by requiring it to be preceded by an investigation, after due notice to the parties interested, is the class of cases arising under laws authorizing the removal of officers for cause and after the hearing of charges against them. To remove from office is generally an executive function—at all events, it is not essentially judicial, for the executive may be vested with this function to be exercised at his pleasure or caprice, or for such cause as to him may seem proper, and upon such inquiries as he may think best to make, or in the absence of any inquiry whatever. The power may also be vested as to municipalities and counties in their common councils, boards of supervisors, and other local authorities, and even then is not necessarily or ordinarily judicial or *quasi*-judicial. If, however, the law vesting the authority either in the Governor,

or in some local body, or otherwise, indicates that such authority shall be exercised for cause only, and either expressly or by implication that the officer against whom the proceeding is shall have notice thereof, and of the charges against him, and shall be entitled to be heard and produce evidence in his defense, then the proceeding is judicial in character, because the power to hear and determine is to be exercised, as in courts, only after notice and a hearing on the merits, and the officer is recognized as having a right in his office of which he cannot be deprived, except for proper cause ascertained by a proceeding judicial both in its form and in its consequences.''

To the same effect see, also, *People* v. *Powell,* 127 Ill. App. 614; *Powell* v. *Bullis,* 221 Ill. 379 (77 N. E. 575); *Kammann* v. *City of Chicago,* 222 Ill. 63 (78 N. E. 16).

The conclusion reached in those cases was upon writs of *certiorari* wherein it was determined that the orders of such boards were not ministerial but judicial and, therefore, subject to re-examination by a court. The ancient remedy referred to is known in this state as the writ of review (Section 602, L. O. L.), and it lies only for the re-examination of judicial or *quasi*-judicial acts and not for ministerial orders: *Hodgdon* v. *Goodspeed,* 60 Or. 1 (118 Pac. 167).

''A writ of review,'' says Mr. Chief Justice EAKIN in *Cookinham* v. *Lewis,* 58 Or. 484, 488 (114 Pac. 88, 115 Pac. 342), ''lies only in cases in which the lower court, officer or tribunal has exceeded its jurisdiction, or where it has exercised its judicial functions erroneously and contrary to the course of procedure applicable to the matter before it.''

The proceeding herein is not a writ of review, which remedy is adverted to only for the purpose of showing that the civil service board of the City of Portland, when investigating an alleged improper removal

of an employee in the classified service of that municipality, who has been permanently appointed, acts as a *quasi*-judicial tribunal and its orders, to be invulnerable, must be consonant with, and not contrary to the course of procedure applicable to matters before it. See, however, Dillon's Mun. Corp. (5 ed.), Section 399, where it is stated that the powers of such a board are administrative or executive in their nature and not judicial, and hence the conclusions reached by such committee are not subject to be reviewed on *certiorari, mandamus* or otherwise, since the duty devolving upon the members of the board demands an exercise of judgment and discretion, which cannot be controlled by the courts.

No interference with the judgment or discretion of such boards should be tolerated under any circumstance, but courts will, upon proper application, re-examine the proceedings and determine whether or not the commissioners or boards had obtained jurisdiction of the persons of the adverse parties in the manner prescribed by the statute conferring the power and ascertain if the findings of fact and of law made by such *quasi*-judicial tribunals and the conclusions predicated upon such deductions, conform to the rules of practice and procedure governing such cases.

3. The order of the civil service board of February 18, 1915, makes no finding in respect to either of the questions that were submitted to and required to be considered and determined by it as to "whether such removal or discharge was or was not for political or religious reasons, or was or was not made in good faith for the purpose of improving the public service." It will be remembered that Section 108 of the charter regulating the procedure in an investigation of that kind, provides that "the board may find that the employee so

removed is entitled to reinstatement upon such condi-
tions or terms as may be imposed by the board, or may
affirm his removal.'' The material part of the order
of February 18, 1915, is as follows:

"That Mr. Crowe be suspended from the service
from the date of his discharge, November 30, 1914,
until May 1, 1915, and that an order be entered that
he report for duty on May 1st aforesaid.''

The quoted language is a conclusion of law which
is not based upon any expressed finding of fact. The
effect of such deduction, when read in connection with
the findings of fact made October 27, 1915, is equiva-
lent to a determination that the written charges pre-
ferred against the plaintiff by the chief of police, and
acted upon by the defendant, were true and that plain-
tiff was guilty "of neglect of duty and conduct unbe-
coming an officer,'' but that the sentence of removal
should be commuted to a suspension for a definite time.
As there were no written findings of fact made on
February 18, 1915, no foundation was laid upon which
could rest the substitution of one punishment for an-
other after conviction, and this being so, the deter-
mination of the civil service board of that date was
a nullity.

4. The findings of fact made October 27, 1915, are
sufficient in the particulars mentioned. A part of the
order of that time reads:

"Inasmuch as the minutes of the Board's proceed-
ings held at its meeting February 18, 1915, do not state
completely and accurately the Board's then findings
and order of that date in said matter, it is further
ordered that these findings, order and proceedings be
entered of record as of February 18, 1915.''

This excerpt does not show wherein the findings and
order made at that time did not completely and accu-

rately state the decision upon the questions of fact that were then reached as a result of a judicial examination, or set forth in what particular the declaration then authoritatively given failed to announce the conclusion of law deduced from the findings of fact that were made. In *Grover* v. *Hawthorne,* 62 Or. 65, 75 (116 Pac. 100, 121 Pac. 804), Mr. Justice BEAN remarks:

"When a judgment has been actually rendered or an order made by the court which is entitled to be entered of record, but, owing to the misprision of the clerk, has not been so entered, the court may order the entry to be made *nunc pro tunc.* But it is not the function of the court to create an order now, which ought to have been passed at a former time. In ordering an entry made *nunc pro tunc,* not one jot or tittle should be added to or taken from the original judgment."

To the same effect see, also, *State* v. *Morgan,* 65 Or. 314 (132 Pac. 957); *Frederick & Nelson* v. *Bard,* 66 Or. 259 (134 Pac. 318); *Silliman* v. *Silliman,* 66 Or. 402 (133 Pac. 769); *Nat. Council* v. *McGinn,* 70 Or. 457 (138 Pac. 493); *Fisher* v. *Portland Ry. L. & P. Co.,* 74 Or. 229 (137 Pac. 763, 143 Pac. 992, 145 Pac. 277); *State* v. *Donahue,* 75 Or. 409 (144 Pac. 755, 147 Pac. 548). From a consideration of the opinions in these cases it would seem that the order of October 27, 1915, directing a *nunc pro tunc* entry to be made was insufficient for that purpose, because it was not stated what conclusion of fact and of law had been theretofore made. But however this may be, the question will not be determined since our decision herein will be put upon the legal principle that the power of the civil service board in investigating the dismissal of the plaintiff was exhausted February 18, 1915, by its first attempted exercise.

5. In *Renaud* v. *State Court of Mediation & Arbitration,* 124 Mich. 648 (83 N. W. 620, 83 Am. St. Rep. 346, 51 L. R. A. 458, 460), a controversy arose between employers and employed as to the reasonable scale of compensation which should be paid for manufacturing boots and shoes. In order to settle the dispute the parties jointly requested an arbitration, whereupon a hearing was had and a conclusion reached that was unsatisfactory to the employers upon whose petition a rehearing was ordered. Representatives of the employed instituted proceedings to prevent a re-examination of the issues which had been considered and determined, and it was held that *mandamus* would lie for that purpose. In referring to such special tribunal it was remarked:

"Has the court a right to grant a rehearing after it has once rendered its decision? From what has already been said, it is apparent that the purpose to be served by the establishment of this court is to have a speedy and inexpensive disposition of the differences submitted to it. It was not the purpose of the legislature to create what we ordinarily understand by a court of law. The Constitution provides that these courts shall have such powers and duties as shall be prescribed by law. The law which called this court into existence is the limit of its power. The act nowhere authorizes the court to grant a rehearing. When its decision has been rendered and filed, it has exhausted its power in a given case."

The purpose to be subserved by the municipal charter in creating the civil service board was to establish a tribunal for the speedy and final determination of investigations relating to the alleged improper removal or discharge from the classified list of persons who had been permanently employed. It was a very simple matter for the board to have determined from the evidence received whether or not the plaintiff had

been dismissed in good faith for the purpose of improving the public service. A rule of practice which, in the absence of any charter provision, would permit the board to amend its decision, eight months after it was rendered, would allow an unlimited time within which to make a correction in its final determinations. Believing such delays should not be sanctioned, we conclude no error was committed in dismissing the proceedings. The judgment is therefore affirmed.

<div align="right">Affirmed.</div>

Mr. Chief Justice McBride, Mr. Justice McCamant and Mr. Justice Bean concur.