Argued March 7, reversed and remanded April 1, rehearing denied June 17, 1919.

# ASKAY *v.* MALONEY.

### (179 Pac. 899.)

**Municipal Corporations—Detectives—Complaint Against Surety— Statement of Necessity for Undertaking.**

1. Complaint against city detectives and their surety for death of a third person from an accidental shooting a's the detectives were recapturing an escaped prisoner must properly plead the legal necessity for the surety's undertaking described.

**Pleading — Conclusion of Law — Complaint Against Surety — Legal Necessity for Undertaking.**

2. Complaint against police detectives and surety for death from accidental shooting of third person as detectives were recapturing escaped prisoner, which alleged that on a given date, "in accordance with the law covering such cases," the surety entered into a bond or undertaking, merely pleaded a conclusion of law as to legal necessity for undertaking, and was insufficient; Section 90, L. O. L., providing that reference to ordinance or enactment by its title and date of approval shall be sufficient, not having been complied with.

**Evidence—Judicial Notice—Municipal Charter.**

3. Under Laws of 1917, page 514, Supreme Court must take judicial notice that on December 25, 1914, the City of Portland was working under the charter which went into effect July 1, 1913, as revised by the council of the city, August 19, 1914; the charter having been filed as required.

**Officers—Requirement of Bond—Signature.**

4. Though the requirement that an official "give a bond" does not necessarily mean that he must sign it, or that his signature is essential to its validity, unless he does sign it he is not directly liable upon it as a matter of contract.

**Officers—Official Undertaking—Liability With Surety.**

5. An officer, on the official undertaking or bond executed by him, may be sued jointly with his surety for damages resulting from misconduct in office, if the stipulations of the instrument cover the situation involved.

**Municipal Corporations—Detectives—Sureties—Collateral Responsibility—"Reimburse."**

6. Where undertaking of surety company was to "reimburse" a city for any loss sustained by reason of failure faithfully to discharge their duties of city detectives named in attached schedule, responsibility of surety was not concurrent, but collateral and successive, while that of detectives was primary; "reimburse" meaning to replace as equivalent for what has been taken, lost or expended, to refund, pay back or restore, indicating a secondary liability.

#### Appeal and Error—Law of Case—Ruling on Former Appeal—Limitation.

7. Ruling on former appeal that demurrer to complaint on particular ground was not well taken is the law of the case, but its effect must be limited strictly to its extent.

#### Pleading—Election Between Tort and Contract—Right of Defendant.

8. City detectives and surety for them, sued for accidental shooting of third person by detectives while retaking escaped prisoner, had right to compel plaintiff to elect between two causes of action, one for tort, other on contract, stated in complaint, only liability of detectives as disclosed being for tort, while breach of contract alone could be attributed to surety.

#### Trial—Ruling as to Duty to Produce Evidence—Statement as to Shifting of Burden.

9. Court cannot tell jury that party holding affirmative of an issue has sustained burden of proof at any stage of the case, and that it then shifts.

#### Trial—Instructions—Interference With Province of Jury.

10. In view of Sections 726, 810, 868, L. O. L., instructions as to shifting of burden of proof *held* erroneous as interfering with jury's province to act as exclusive judges of effect and value of evidence.

#### Arrest—Arrest Without Warrant—Right of Officers—Suspicion.

11. Under Section 1763, L. O. L., city detectives *held* within their rights and duties when they arrested without a warrant in a saloon a person suspected of robbery who had in his possession the stolen watch.

#### Municipal Corporations—Detectives—Escape of Prisoner—Right to Shoot.

12. Under Sections 1760, 1909, L. O. L., city detectives, who had properly arrested without warrant one who had stolen a watch, were in the proper performance of their duty when they shot at the thief on his escape to prevent his getting away.

#### Municipal Corporations—Detectives—Action in Bond—Pleading.

13. Complaint against city detectives and their surety that the detectives "carelessly and negligently, and without care or caution, disregarding the fact that said street intersection was a place where passengers and people were likely to be," shot at a thief to prevent his escape, properly charged negligence; the adverbs being a proper component of the allegation.

#### Municipal Corporations — City Detectives — Negligence — Action on Bond—Burden of Proof.

14. On complaint against city detectives and their surety for having carelessly and negligently, disregarding character of street intersection as place where people were likely to be, shot plaintiff's decedent in attempt to recapture escaped thief, it was incumbent on plaintiff to prove occurrence of mishap, and alleged negligence of detectives which brought it about.

Municipal Corporations—City Detectives—Duty of Care in Retaking Thief.

15. City detectives, in retaking in the street a thief who had escaped from their custody, were under duty to act with reasonable prudence to avoid injury to innocent persons, and should have used more caution in firing upon the thief with pistols than if merely grappling with him.

Municipal Corporations—City Detectives—Negligence in Retaking Thief—Question for Jury.

16. Whether city detectives under all circumstances were negligent in shooting in street at thief escaped from their custody, thus accidentally killing plaintiff's decedent, *held* a question for the jury, in action against such detectives and their surety.

From Multnomah: George G. Bingham, Judge.

Department 1.

This is the second appeal of this case. The former opinion may be read in 85 Or. 333 (166 Pac. 29). The defendant Southwestern Surety Company had relied solely on its general demurrer to the complaint but when the case was reversed it filed an answer challenging certain allegations of the complaint, admitting giving two several bonds, one for each of the individual defendants, and setting up substantially that the detective defendants had arrested one John Jones, who had committed a felony; that he escaped and in their effort to recapture him it became necessary to shoot at him, in doing which with due circumspection the defendant Swennes fired and by chance a bullet from his revolver struck the hard-surface pavement or some other intervening object, whereby it was deflected from its true line of aim and struck the plaintiff's decedent, without fault or negligence on the part of Swennes. Referring to the very full statement in the former report of this case for particulars, it is enough to say that the salient facts are that the two detectives, defendants here, had arrested one Jones for robbery, finding on him some of the property taken from the

victim he had robbed, and while they were taking the prisoner to the city jail he broke away and was escaping on Pine Street in Portland. After hot pursuit and commanding him to halt, the detectives fired at him as he continued to run. At the same time a street-car in which the decedent Askay was riding was passing along Fifth Street, crossing its intersection with Pine Street, and a bullet entered the street-car window and killed Askay.

The bond given recites that the ordinance of the City of Portland require each member of the police force thereof to give a bond; that the Southwestern Surety Company has by bids made to the city signified its willingness to issue bonds, and that certain employees have been duly appointed members of the police force, and then undertakes to reimburse the City of Portland or any person, "for any loss sustained by reason of the failure of any persons named in the schedule hereto attached, or additions thereto, as hereinafter provided, * * to faithfully discharge all the duties of their respective offices according to the true intent and meaning of said ordinances, and failure to make payment for any and all damages, that may be adjudged against them by any tribunal for the illegal arrest, imprisonment or injury by him to any person," for the year ending February 2, 1915. The individual detectives did not sign this undertaking and its terms do not indicate that it was intended they should subscribe it. It was executed by the insurance company alone, while the names of the individual defendants are said to be recited in the schedule attached to the instrument.

We remember that the complaint narrates the appointment of the detectives as police officers, the corporate existence of the insurance company and also of

the city, describes the situation at the intersection of Fifth and Pine Streets and declares that on December 25, 1914, while the plaintiff's decedent was a passenger on the street-car at that point, the policemen "commenced to discharge and did discharge revolvers, and thereby caused leaden bullets to be promiscuously sent towards the street-car upon which plaintiff's intestate was then riding, and the said defendants, Patrick R. Maloney and Tom Swennes, at said time, each holding and discharging revolvers, carelessly and negligently, and without care or caution, disregarding the fact that said intersection was a place where passengers and people were likely to be, discharged said revolvers and caused one of said leaden bullets to strike plaintiff's intestate," whereby he was killed. It is further charged that the officers mentioned carried revolvers by virtue of their official capacity and pretended to be in discharge of their regular duties at the time in that they, "although without justification, were discharging their said revolvers towards a person whom, as said police officers, they and each of them had arrested and taken into custody."

The defendants, challenging the complaint in material particulars, urge as a justification that the party arrested had committed the felony of robbery, for which they had taken him into custody; that he escaped while they were conducting him to the city jail and after pursuing him and commanding him to halt they fired at him, using due care and caution, and the killing of Askay was the result of unavoidable accident. This matter was traversed by the reply. From a verdict and judgment in favor of the plaintiff the defendants have appealed.

REVERSED AND REMANDED.

For appellants there was a brief over the names of *Mr. Henry J. Bigger, Mr. Stanley Myers* and *Mr. Chester V. Dolph,* with an oral argument by *Mr. Bigger.*

For respondent there was a brief over the names of *Messrs. Richards & Richards* and *Mr. Coy Burnett,* with oral arguments by *Mr. Oren R. Richards* and *Mr. Burnett.*

BURNETT, J.—1, 2. In passing, it is proper to note that as stated in 29 Cyc. 1451,

"The purpose of an official bond being to protect the government from loss due to the improper performance of an official duty, as well as to insure the proper performance of such official duty, a bond purporting to be an official bond, given when not required by the law, has no legal effect."

This is well supported by authority. It is laid down in *Malheur County* v. *Carter,* 52 Or. 616 (98 Pac. 489), that the complaint itself must show the authority for taking an official bond and that the recitals of the instrument itself are not sufficient for that purpose. It would seem to be necessary, therefore, that the complaint should properly plead the legal necessity for the undertaking described in the complaint. The allegation of that pleading in the instant case is, "that on the twenty-eighth day of February, 1914, in accordance with the law covering such cases, the Southwestern Surety Company entered into a bond or undertaking," a copy being attached as an exhibit. To state that this instrument was executed "in accordance with the law covering such cases," is but to state a conclusion of law, and is not the averment of a fact. Under Section 90, L. O. L., it is sufficient to refer to the ordinance or enactment of any incorporated city

or town by its title and the date of its approval in
stating a right derived therefrom; but it is essential
that this section should be complied with if the plain-
tiff would show the validity of the undertaking upon
which he relies.

3–5. The occurrence narrated in the complaint took
place, as stated therein, December 25, 1914. At that
time the City of Portland was working under the char-
ter which went into effect July 1, 1913, as revised by
the council of the municipality August 19, 1914. Of
this we must take judicial notice: Chap. 273, p. 514,
Laws 1917; *Crowe* v. *Albee,* 87 Or. 148 (169 Pac. 785).
That charter contains no direct reference to the duty
of a police officer to file an undertaking. While, as
taught in *Clark* v. *Bank of Hennessy,* 14 Okl. 572 (79
Pac. 217, 2 Ann. Cas. 219), "giving a bond" by an
official does not necessarily mean that he must sign it
or that his signature is essential to its validity, unless
he does sign it he is not directly liable upon it as a
matter of contract. We are not unmindful, indeed,
that under Section 349, L. O. L., when a public officer
by official misconduct forfeits his official undertaking
or other surety or renders his sureties therein liable
thereon, any person injured by such misconduct, or the
one entitled to the benefit of such surety, may main-
tain an action thereon in his own name against the
officer and his sureties. This can mean nothing more
than that upon an instrument executed by the officer
he may be sued jointly with his sureties for damages
resulting from his misconduct in office, if the stipula-
tions of the instrument cover the situation involved.

6. A perusal of the undertaking here in question
shows no more than that the surety company collater-
ally undertook to indemnify the city or anyone injured
by the malfeasance of the individual defendants. The

deduction is that the latter are not directly liable as upon contract. It is not intimated in the pleadings that they gave a bond. According to the complaint, if culpable at all, they committed a tort and not a breach of the contract; while on the other hand the surety company, if liable at all, is chargeable only upon contract and not for tort. The responsibility of the company is not concurrent, but collateral and successive, while that of the individual defendants is primary. The undertaking of the company was to "reimburse," which means to replace as an equivalent for what has been taken, lost or expended, to refund, pay back, restore: 7 Words & Phrases, 6051, indicating clearly a secondary liability.

7, 8. It is the law of the case because so laid down in the former decision herein, that the demurrer on this ground was not well taken. The effect of that ruling, however, must be limited strictly to that extent. What is said here leads to the conclusion that the Circuit Court was in error in not compelling the plaintiff to elect between the two causes of action stated in the complaint, the one for tort and the other on contract. It was a right of the defendants that an election should be compelled: *Hayden* v. *Pearce,* 33 Or. 91 (52 Pac. 1049); *High* v. *Southern Pac. Co.,* 49 Or. 98 (88 Pac. 961); *Harvey* v. *Southern Pac. Co.,* 46 Or. 505 (80 Pac. 1061); *Swank* v. *Moisan,* 85 Or. 662 (166 Pac. 962). The canon laid down by the case last cited is in substance that to require an election it must be impossible for both causes of action simultaneously to be true. The plaintiff's averment is that the company, not the other defendants, entered into a bond "to indemnify and pay any damages which any person might suffer by reason of neglect or injury caused by said Patrick Maloney or said Tom Swen-

nes." Here, as the plaintiff's grievance is stated in the complaint, it is impossible for a liability on the bond to become a fact until the damages for the tort have been adjudicated in the terms of the undertaking. The police officers had not executed any bond. For all that appears in the complaint they may have been utterly ignorant of its existence. Their only liability, as disclosed by the plaintiff's pleading, is for tort, and breach of the contract is all that can be attributed to the company. The court was in error in not requiring an election.

9, 10. The defendants complain that the court was wrong in giving to the jury the seventh and eighth instructions, as follows:

"(7) But when the testimony shows that weapons, pistols, in the hands of Mr. Maloney and Mr. Swennes, killed a man when they had control of these weapons, it then devolves upon Mr. Swennes and Mr. Maloney to show that the killing was unintentional, and without negligence or fault upon their part.

"(8) When the plaintiff has shown the death of his intestate by a bullet that came from the pistols of those officers the burden is then shifted to the defendants to show that it was unintentional and without fault, negligence or carelessness upon their part."

The rule is thus stated:

"The term 'burden of proof' has two distinct meanings. By the one is meant the duty of establishing the truth of a given proposition or issue by such a *quantum* of evidence as the law demands in the case in which the issue arises; by the other is meant the duty of producing evidence at the beginning or at any subsequent stage of the trial, in order to make or meet a *prima facie* case. Generally speaking, the burden of proof, in the sense of the duty of producing evidence, passes from party to party as the case progresses, while the burden of proof, meaning the obligation to establish the truth of the claim by a preponderance of

evidence, rests throughout upon the party asserting the affirmative of the issue, and unless he meets this obligation upon the whole case he fails. This burden of proof never shifts during the course of a trial, but remains with him to the end": 10 R. C. L. 897; *Mobley* v. *Lyon,* 134 Ga. 125 (67 S. E. 668, 137 Am. St. Rep. 213, 19 Ann. Cas. 1004); *Supreme Tent K. M.* v. *Stensland,* 206 Ill. 124 (68 N. E. 1098, 99 Am. St. Rep. 137); *Shephard* v. *Western Union T. Co.,* 143 N. C. 244 (55 S. E. 704, 118 Am. St. Rep. 796); *Boardman* v. *Lorentzen,* 155 Wis. 566 (145 N. W. 750, 52 L. R. A. (N. S.) 476); *Tourtellot* v. *Rosebrook,* 11 Met. (Mass.) 460.

In connection with the duty of producing evidence which may devolve upon one or the other party by turns during the progress of the trial, the court in deciding a motion for nonsuit or for a directed verdict has authority to rule that the one or the other party has or has not made a sufficient case to require his opponent to proceed, but it does not give to the judge the right or duty to say to the jury that the party holding the affirmative of the issue has sustained the burden of proof at any stage of the case and that it then shifts to the other party. Our statute declares that—

"The party having the affirmative of the issue shall produce the evidence to prove it. Therefore, the burden of proof lies on the party who would be defeated if no evidence were given on the other side": Section 810, L. O. L.

And it is said in Section 726, L. O. L.: "Each party shall prove his own affirmative allegations." Again, the jury is the judge of the effect or value of the evidence addressed to it, except when it is declared to be conclusive: Section 868, L. O. L. The deduction is that when the court instructs the jury that the burden of proof shifts, it is interfering with the province of the jury in its capacity to act as the exclusive judge

of the effect and value of the evidence. The giving of those two instructions was therefore erroneous.

11, 12. The theory of the trial court seems to have been that it was sufficient to show that the death of plaintiff's decedent happened from a pistol shot fired by one of the policemen. That these men were peace officers and authorized to make arrests is shown by *Reising* v. *City of Portland,* 57 Or. 295 (111 Pac. 377, Ann. Cas. 1912D, 895, 8 N. C. C. A. 800). A peace officer may arrest a person without a warrant when a felony has in fact been committed and he has reasonable cause to believe the person arrested to have committed it: Section 1763, L. O. L. The practically admitted facts are that early in the evening of the day in question a man had been robbed of his watch and some money in the northern part of Portland; he appealed to the chief of police and the two officers defendant here were detailed to accompany him to search for the robber. They found him in a saloon near the scene of the robbery and in his possession the watch of which the man had been robbed. The officers were clearly within their rights and duties when they arrested him without a warrant. It is said in Section 1760, L. O. L.:

"If after notice of intention to arrest the defendant, he either flee or forcibly resist, the officer may use all necessary and proper means to effect the arrest."

Section 1909, L. O. L., declares that:

"The killing of a human being is also justifiable when committed by any person as follows:— * * In the attempt, by lawful ways and means, to arrest a person who has committed a felony, * * "

—while the preceding section justifies public officers in killing one when necessarily committed in retaking

persons charged with or convicted of crime, who have escaped or been rescued, or in arresting a person fleeing from justice, who has committed a felony.

13, 14. The officers were plainly in the performance of their duty enjoined upon them by law, but it is charged that in so doing they acted "carelessly and negligently and without care or caution, disregarding the fact that said intersection was a place where passengers and people were likely to be." The adverbs "carelessly" and "negligently" and the phrase "without care or caution" are not sufficient of themselves alone to impute culpability to a lawful act; but in conjunction with the averment that the officers disregarded the fact that the intersection was a place where passengers and people were likely to be, they are a proper component of an allegation upon which to base a charge of negligence. It is not sufficient, however, even under such a complaint, to show the mere happening of an accident. The complaint in this respect consists of two elements: One, the occurrence of the mishap; and the other, the alleged negligence of the defendants which brought it about. Under the issues of this case, it was incumbent upon the plaintiff to prove both of these elements. The burden of proof rested upon him until the final analysis of the evidence after all of it had been put into the scales on both sides, and he was entitled to prevail only if the jury in weighing the testimony as it was submitted to it, should determine that the balance preponderated in his favor. In *Duntley* v. *Inman,* 42 Or. 334 (70 Pac. 529, 59 L. R. A. 785), a pulley broke in the mill of the defendant company and killed the plaintiff's decedent, an employee there. After citing sundry precedents, Mr. Justice BEAN goes on to say:

"There was, therefore, no error in instructing the jury that the plaintiff must prove the negligence alleged, or in refusing to instruct that the breaking of the pulley, if unexplained by the defendant, was of itself evidence of the want of care on its part."

To the same effect is *Finn* v. *Oregon Water P. & Ry. Co.*, 51 Or. 66 (93 Pac. 690). The rule is thus laid down in *McComber* v. *Nichols*, 34 Mich. 212 (22 Am. Rep. 522):

"Injury alone will never support an action on the case; there must be a concurrence of injury and wrong. If a man does an act that is not unlawful in itself he cannot be held responsible for any resulting injury, unless he does it at a time or in a manner or under circumstances which render him chargeable with a want of proper regard for the rights of others. In such a case the negligence imputable to him constitutes the wrong, and he is accountable to persons injured, not because damage has resulted from his doing the act, but because its being done negligently or without due care has resulted in injury. If the act was not wrongful in itself, the wrong must necessarily be sought for in the time or manner or circumstances under which it was performed, and injury does not prove the wrong, but only makes out the case for redress after the wrong is established."

It is succinctly stated thus in *Radcliffe* v. *Mayor*, 4 N. Y. 200 (53 Am. Dec. 357), quoted with approval in *Pickens* v. *Coal River B. & T. Co.*, 51 W. Va. 445 (41 S. E. 400, 90 Am. St. Rep. 819):

"An act done under lawful authority, if done in a proper manner, can never subject the party to an action, whatever consequences may follow."

And it is said in *Highway Commissioners* v. *Ely*, 54 Mich. 173 (19 N. W. 940), by Mr. Justice CHAMPLIN:

"There is no liability for doing an act which is either directed or authorized by a valid statute, if performed with reasonable care and skill."

15, 16. A street is not a sanctuary for a robber, and the officers had a right to exercise their prerogative of arresting the felon wherever they might find him, whether in the street or in some secluded spot. The mere act of their shooting at him was not unlawful or negligent *per se,* because as to the arresting officers it was authorized by statute. Of course, it was their duty to act with reasonable prudence to avoid the injury of innocent persons, and the care must be commensurate with the danger involved. It goes without saying that a greater *quantum* of caution should be observed in firing upon him with pistols than if they were grappling him with their hands. Whether they were negligent under all the circumstances of the case, as a result of which the injury was inflicted, was a question for the jury to determine according to the preponderance of the evidence upon a consideration of the whole case: *Palmer* v. *Portland Ry., L. & P. Co.,* 56 Or. 262 (108 Pac. 211); 59 Am. & Eng. R. Cas. (N. S.) 68. See, also, *Morris* v. *Platt,* 32 Conn. 75; *Paxton* v. *Boyer,* 67 Ill. 132 (16 Am. Rep. 615); *Shaw* v. *Lord,* 41 Okl. 347 (137 Pac. 885, Ann. Cas. 1916C, 1147, 50 L. R. A. (N. S.) 1069); *Brown* v. *Kendall,* 6 Cush. (Mass.) 292; cited in the former opinion.

In the main, the cases cited by the plaintiff are those where the shooting occurred under circumstances making it negligent *per se* to discharge the weapons. For instance, *Morgan* v. *Mulhall,* 214 Mo. 451 (114 S. W. 4), was a case where the shooting was by private parties in a promiscuous fracas at a "Wild West" show. *Manning* v. *Jones,* 95 Ark. 359 (129 S. W. 791), concerned private parties hunting on leased land where they shot the tenant, as they said, "accidentally." The court said:

"The test of liability is, not whether the injury was accidentally inflicted, but whether the defendants were free from blame."

And in *Benson* v. *Ross*, 143 Mich. 452 (114 Am. St. Rep. 675, 106 N. W. 1120), private parties were shooting at a mark within the city limits in violation of an ordinance forbidding the same. A similar case was *Conradt* v. *Clauve*, 93 Ind. 476 (47 Am. Rep. 388), where a horse was killed by parties engaged in target practice in the fair grounds of the defendants by their permission. *Bizzell* v. *Booker*, 16 Ark. 308, cited by the plaintiff, was a case where it was alleged that the plaintiff's cotton was burned by a forest fire charged to have been started by the defendants' camp fire. One section of the syllabus reads thus:

"Where one is doing a lawful act—or an act not mischievous, rash, reckless, or foolish, and naturally liable to result in injury to others—he is not responsible for damages resulting therefrom by accident or casualty, while he is in the exercise of such care and caution as a prudent man would observe, under the circumstances surrounding him, to avoid injury to others; but he is answerable for damages resulting from negligence, or a want of such care and caution on his part."

In brief, the police officers were clearly in discharge of a duty enjoined upon them by law. They are responsible for injury only in case it resulted from their negligence. The burden of proof to substantiate this is upon the plaintiff to the end of the case, without shifting during the progress thereof, and to establish negligence it is not sufficient merely to show that a fatal accident happened. It must be the result of some proved shortcoming on the part of the defendants.

The judgment of the Circuit Court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.    REHEARING DENIED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.