Argued January 8; affirmed February 24, 1931

# STOWE *v.* RYAN
### (296 P. 857)

*Denton G. Burdick,* of Portland (Jay Bowerman, of Portland, on the brief), for appellant.

*George Mowry* and *George A. Pipes,* Deputy District Attorneys, both of Portland (Stanley Myers, Ex District Attorney, and John Mowry, Deputy District Attorney, both of Portland, on the brief), for respondents.

*Earl F. Bernard,* of Portland (Collier, Collier & Bernard, of Portland, on the brief), amici curiae.

BROWN, J. It appears from the order of discharge that Commissioner H. C. Brumbaugh was designated to make the investigation into alleged political activities of this plaintiff and other employees of the county clerk's office, and that, upon submitting his findings in the matter, the entire personnel of the commission

being present, such findings were adopted by the commission as a whole, and the commission as a whole having approved *in toto* the findings and recommendations of the designated commissioner, it was ordered that the plaintiff be discharged from the service of Multnomah county, on the grounds and for the reason that it appeared from the findings and testimony adduced at the hearing that he had violated the provisions of section 28, chapter 162, General Laws of Oregon, 1929, "in that he did take part in political management and political campaign, and did engage in political activities for and against a person and persons subsequent to the 4th day of June, 1929, when the provisions of chapter 162, General Laws of Oregon for 1929 became effective; and did thereby commit a wilful violation of the provisions of chapter 162, General Laws of Oregon for 1929." As we have already stated, this order was signed by the three members of the commission.

The plaintiff contended that the discharge was made for political reasons and was not made in good faith for cause, and that the board in making the discharge acted upon a misconception of the evidence and of the law.

Oregon Code 1930, § 8-202, provides that "any party to any process or proceeding before or by any inferior court, officer, or tribunal may have the decision or determination thereof reviewed for errors therein, as in this chapter prescribed, and not otherwise." Section 8-204 provides that the writ "shall be allowed in all cases where the inferior court, officer, or tribunal in the exercise of judicial functions appears to have exercised such functions erroneously, or to have exceeded its or his jurisdiction, to the injury of

some substantial right of the plaintiff, and not otherwise.'' The preceding section names those who shall be competent petitioners for a writ of review.

This proceeding arises out of the enforcement by the Multnomah County Civil Service Commission of chapter 162, General Laws of Oregon, 1929, codified as Oregon Code 1930, §§ 27-2901 to 27-2936, inclusive. The purpose of the enactment, as expressed in the title, is:

"To provide a general system, based upon examination and investigation as to merit, efficiency and fitness, for the appointment, employment and promotion of certain county employees in counties having a population of 200,000 persons, or more, and to regulate the transfer, reinstatement, suspension and discharge of such employees; to create a county civil service commission in each such county; to prescribe the powers and duties of such commission; to authorize and empower the board of county commissioners of such counties to create all offices, places, positions and employments under civil service, and fix the salaries and compensation thereof; to provide for the adoption and induction of certain incumbents into service, and the retention of others until replaced; to provide for certain preferences and credits in favor of war veterans and experienced applicants; to provide penalties for the willful violation of this act; and to repeal all acts and parts of acts in conflict with the provisions of this act.''

Section 2 of the act provides what counties and county employees shall be subject to civil service. Section 3 prescribes the method of appointment, employment, promotion and discharge of all persons under the act. Section 8 authorizes the commission to adopt rules and regulations in order to carry out the purposes of the act. Section 13 empowers the commission to investigate and report upon all matters touching the

enforcement and effect of the provisions of the act, and the rules and regulations prescribed thereunder, and to inspect all places of employment affected by the act to ascertain whether such rules and regulations are being obeyed. Section 14 provides that all hearings and investigations before the commission, or designated commissioner, shall be governed by the rules of procedure to be adopted by the commission. Among other things, this section enacts:

"No informality in any proceeding or hearing, or in the manner of taking testimony before the commission, or designated commissioner, shall invalidate any order, decision, rule or regulation made, approved or confirmed by the commission; provided, however, that no order, decision, rule or regulation made by any designated commissioner conducting any hearing or investigation alone shall be of any force or effect whatsoever unless and until concurred in by the other two members of the commission."

Section 21 provides:

"The tenure of every one holding an office, place, position or employment under the provisions of this act shall be only during good behavior, and any such person may be removed or discharged for any of the following causes:

"(a) Incompetency, inefficiency, or inattention to or dereliction of duty.

"(b) Dishonesty, intemperance, immoral conduct, insubordination, discourteous treatment of the public or of fellow employees, or any other willful failure of good conduct tending to injure the public service, or any willful violation of the provisions of this act or the rules or regulations adopted pursuant thereto. No person in the classified civil service who shall have been permanently appointed under the provisions of this act shall be removed or discharged except for cause, and only upon the accusation of the appointing power, or the commission, a written statement of which

accusation, in general terms, shall be served upon the accused, and a duplicate filed with the commission. Except in cases of persons who have been employed in the county public service continuously for five or more years, such removal or discharge may be made without any previous trial or hearing. Any person so removed or discharged may, within ten days from the time of his removal or discharge, file with the commission a written demand for an investigation. If such demand shall allege, or if it shall otherwise appear to the commission, that the removal or discharge was made for political or religious reasons, or was not made in good faith for cause, the commission shall conduct such investigation. The investigation shall be confined to the determination of the question of whether such removal or discharge was or was not made for political or religious reasons and was or was not made in good faith for cause. The burden of proof shall be upon the discharged person. After such investigation the commission may affirm the removal, or if it shall find that the removal was made for political or religious reasons, or was not made in good faith for cause, shall order the immediate reinstatement and reemployment of such person in the office, place, position or employment from which such person was removed or discharged, which reinstatement shall be retroactive and entitle such discharged person to pay or compensation from the time of removal or discharge. The commission, upon such investigation, in lieu of affirming the removal or discharge, may modify the order of removal or discharge by directing a suspension without pay for a given period, and a subsequent restoration to duty, or a demotion in classification, grade, or pay. The findings of the commission shall be certified in writing to the appointing power, and shall be forthwith enforced by such officer. * * *

"All investigations made by the commission pursuant to the provisions of this section shall be by public hearing, after reasonable notice to the accused of the time and place of such hearing, at which hearing the accused shall be afforded an opportunity of ap-

pearing in person and by counsel, and presenting his defense; provided, however, that the right of the accused to a public hearing and to representation by counsel shall not apply to any preliminary trial or hearing before the accusing authority. No final judgment or order of removal, discharge, suspension or demotion made with the unanimous consent of the commission pursuant to the provisions of this section shall be subject to review by any tribunal. If such judgment or order be concurred in by only two members of the commission, the accused may appeal therefrom to the circuit court of such county. Such appeal shall be taken by serving upon the commission, within thirty days after the date of the entry of such judgment or order, a written notice of appeal, stating the ground or grounds thereof, and demanding that a certified transcript of the record and of all papers on file in the office of the commission affecting or relating to such judgment or order be filed by the commission with such court. The commission shall, within ten days after the filing of such notice, make, certify and file such transcript with such court. The circuit court shall thereupon proceed to hear and determine such appeal in a summary manner, and its decision shall be final."

Section 22 relates to suspension. Section 26 prohibits soliciting or receiving "any assessment, subscription, contribution or political service, * * * for any political purpose whatsoever, from any one on the eligible list of the classified civil service of any county coming under the provisions of this act." Section 28 provides:

"No person in the public service of such county, whether elected or appointed, shall discharge, promote, demote, or in any manner change the official rank, employment or compensation of any person under civil service, or promise or threaten so to do, for giving or withholding, or neglecting to make any contribution of money, or services, or any other valuable thing, for

any political purpose. No person in the public service of such county shall use his official authority or influence to coerce the political action of any person or body, or to affect or interfere with any nomination, appointment or election to public office of any other person. Persons employed under civil service, or on the eligible list thereof, while retaining the right to vote as they please and to express privately their opinions on all political subjects, shall take no part in any political management or political campaign, or engage in any political activity whatsoever for or against any person, candidate or party."

Section 29 provides that the violation of the civil service act shall constitute a misdemeanor, and provides a penalty therefor. Section 34 provides that the provisions of the act shall be liberally construed.

We have set down the above provisions of the Civil Service Act as a full and complete answer to the charges made by the petitioner in the matter of the investigation of his political activity by the commission. The preliminary investigation, the action taken by the commission upon the preliminary report, the order resulting therefrom, the service of the order of discharge, and the public hearing granted the petitioner upon his written demand for an investigation, all appear of record and comport with the requirements of the statute.

The questions presented by this review are not novel. The leading case upon the question of the constitutionality of the Civil Service Law is *Ex Parte Curtis*, 106 U. S. 371 (1 S. Ct. 381, 27 L. Ed. 232). In that case many statutes enacted by Congress were reviewed, among them a statute prohibiting employees of the Treasury Department from owning seagoing vessels, buying or selling public property or securities of a state or the United States; a statute prohibiting gov-

ernment clerks from engaging in trade or business; a statute forbidding judges from engaging in the practice of law, and members of Congress from representing petitioners in the Court of Claims or from acquiring a financial interest in government contracts, forbidding government employees from making gifts or presents to their superior officers or from acting as agents or attorneys for the prosecution of any claim against the United States. Mr. Chief Justice Waite, in delivering the opinion for the court, then made the following observation:

"The evident purpose of Congress in all this class of enactments has been to promote efficiency and integrity in the discharge of official duties, and to maintain proper discipline in the public service."

The act was held to be constitutional, Mr. Justice Bradley alone dissenting.

In *People v. McCullough,* 254 Ill. 9 (98 N. E. 156, Ann. Cas. 1913B, 995), the Supreme Court of Illinois, in passing upon the question of the constitutionality of the state civil service law, said:

"It [the state act] is based on the principle that positions in the public service are not the personal or political perquisite of any officer or party. * * * That principle is not out of harmony with the general spirit, any specific provision, or any implied doctrine of the Constitution of Illinois."

In 13 American Political Science Review, at page 593, there appears an interesting article entitled "Constitutionality of Merit System Legislation," by Ben A. Arneson, of Ohio Wesleyan University. In summarizing his views, the learned writer says, at page 606:

"In no case has a civil service law been held unconstitutional. All decisions touching the subject point to

the conclusion that the merit system can, without any constitutional amendments, be made a part of the administrative machinery of any state or municipality.''

In 5 R. C. L., pp. 608-619, inclusive, the editors have set down a comprehensive and instructive statement in relation to civil service laws and their object, and because of its value and application to the case before us we quote therefrom at length:

''The civil service laws * * * were designed to eradicate the system of making appointments primarily from political considerations * * *. Such laws substitute for the uncontrolled will of the appointing officer the results of competitive examinations. * * *

''It is a well-recognized principle that the legislature may enact laws providing that appointments to municipal offices or positions shall be made according to merit and fitness. * * * The whole subject of the creation of offices, the delegation and regulation of the powers and duties of officers, and the prescribing of the manner of their appointment or election, comprises functions which are inherently legislative and cannot be considered as in violation of constitutional provisions separating the three main departments of government, the legislative, executive and judicial. Therefore, the expediency of adopting civil service regulations, and the wisdom of the means and methods established by which the fitness of persons who apply for office or position in the public service may be ascertained, are generally recognized to be questions determinable solely by the legislature. * * * A public office is not the property of an office holder within the constitutional provision against depriving a man of property, nor does it ever become a vested right as against the right of a state to remove him; * * * and one who desires to serve in an official capacity must submit to the orders and regulations under which he is admitted to the service.''

We find an instructive case in *Commonwealth ex rel. Rotan v. Hasskarl,* 21 Pa. Dist. R. 119, where the

court held that the legislature may prohibit municipal employees from committing the acts forbidden, without violating article 1, section 7, of the Constitution, "relating to 'the free communication of thoughts and opinions' and the right of citizens to 'freely speak, write and print on any subject.'" In that case it was held that the Civil Service Act referred to the taking of an active part, i. e., a managing part, in political affairs by the employees, and in no way conflicted with the constitutional provision. The court said:

"The act does not impose any restriction upon the actions, political or otherwise, of the individual as such, but simply upon the employee of the municipality while holding office or employment thereunder. It is simply a condition of his employment."

In support of its holding, the court then cited the case of *Atkin v. Kansas,* 191 U. S. 207 (24 S. Ct. 124, 48 L. Ed. 148).

We conclude this feature of the cause by directing attention to the case of *McAuliffe v. Mayor, etc., of the City of New Bedford,* 155 Mass. 216, 220 (29 N. E. 517), where the court spoke through one of the eminent justices of all time, Mr. Justice Holmes, then of the Supreme Court of Massachusetts. In that case a policeman had been removed for violation of a rule prohibiting members of the police force from soliciting money for political purposes and becoming members of a political committee. It was urged in the petitioner's behalf that the rule which he was accussed of violating was open to constitutional objections, and, in answering that contention, the court said:

"The part of the rule which the petitioner seems certainly to have violated is as follows:

"'No member of the department shall be allowed to solicit money or any aid, on any pretense, for any political purpose whatever.'

"There was also evidence that he had been a member of a political committee, which likewise was prohibited. * * *

"There is nothing in the Constitution or the statute to prevent the city from attaching obedience to this rule as a condition to the office of policeman, and making it part of the good conduct required. The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman."

■ Manifestly, there is no merit in the contention that the Civil Service Law restrains our ancient liberty by restricting the right to speak, write, or print freely. Oregon Const., Art. 1, § 8.

The discretion vested in the commission to remove offending officials will not be interfered with by the courts. The case of *Crowe v. Albee,* 87 Or. 148 (169 P. 785), is much in point. In passing upon that case, which grew out of the removal of one N. E. Crowe, a policeman, in accordance with the provisions of the Civil Service Law of the City of Portland, this court held that "under Portland City Charter * * * providing for * * * establishing a civil service board before whom an officer removed may demand a hearing, and giving the board power to subpoena and compel the attendance of witnesses, etc., and to reinstate officers or affirm dismissal, the board, when so acting, is a quasi-judicial tribunal, whose judgment and discretion will not be interfered with by the courts, but whose acts will be reviewed to see if they conform to the provisions of the statutes conferring such power." Paragraph 2, syllabus. As to the scope of an investigation by the board, paragraph 3, syllabus, reads:

"The civil service board, upon hearing an appeal from officer dismissed, is confined to determination of the questions of the dismissal being for political or

religious reasons, or whether in good faith for the improvement of the service, and the officer must sustain the burden of proof."

At page 156 of the opinion of 87 Or., the court said:

"No interference with the judgment or discretion of such boards should be tolerated under any circumstances * * *."

■ The petitioner attacks the sufficiency of the evidence to warrant his discharge. It is sufficient to say that a writ of review presents a question of law alone arising on the record of the inferior tribunal. See *Curran v. State,* 53 Or. 154 (99 P. 420), and citations.

As a bar to his removal, he likewise invokes the following language of the Civil Service Act:

"No person in the public service of such county * * * shall discharge * * * any person under civil service * * * for giving or withholding * * * services * * * for any political purpose."

■■ Counsel contends that the word "person" includes the civil service commission. We cannot follow counsel. The act should be construed in accordance with the expressed intent of the lawmakers: *Spencer v. City of Portland,* 114 Or. 382 (235 P. 279). The term "person," as used in its primary sense, means a natural person only. As to the meaning which attaches thereto in any given case, the editors of Corpus Juris have this to say:

"The term is a broad one, and the sense in which it is used in any particular instance may often be ascertained from the context and intent with which it is employed. Thus it has been held to include an alien; all mankind; * * * (but not when such construction is not made imperative from the context or intent with which the term is employed)." 48 C. J., 1038, 1039.

■■ The petitioner discusses at great length the right of the commission to interfere with the county

clerk's office by removing or appointing a deputy county clerk. The office of the county clerk is a constitutional office; but that of deputy county clerk is strictly statutory. If the appointing power were expressly given to the county clerk by the constitution, then in such case the commission would have no right to appoint or discharge the deputy county clerk. An excellent case touching on that subject is *People v. Angle,* 109 N. Y. 564 (17 N. E. 413).

 Counsel contends that there is a conflict between sections 28 and 21 of the act. We can see no conflict in the provisions of these sections. It is a canon of statutory construction that all statutes relating to the same subject-matter should be read together, and effect given to every word, phrase, sentence and section of all such statutes, if that be possible: *James v. City of Newberg,* 101 Or. 616 (201 P. 212).

In conclusion, we note the case of *City of Chicago v. The People ex rel. Cobden G. Gray,* 210 Ill. 84 (71 N. E. 816), where the Supreme Court of Illinois, in passing upon the Civil Service Law, said:

"If a trial of a civil service employee is held in the manner pointed out by the statute, before the proper board, and evidence is heard tending to show the guilt of the accused, the action of the civil service commission, based upon the finding of the board, is not reviewable by the courts."

After a consideration of all the alleged errors, we are satisfied that this case should be affirmed. It is so ordered.

BEAN, C. J., BELT and CAMPBELL, JJ., concur.