# 2007 DTA 69

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**

MABEL BAEZ DIAZ
Recurrente

v.

AUTORIDAD DE ENERGÍA ELÉCTRICA
Recurrida

Núm. KLRA-02-00777

San Juan, Puerto Rico, a 11 de mayo de 2007

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
la Juez Bajandas Vélez y el Juez Ramírez Nazario

Rodríguez de Oronoz, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece ante nos, la señora Mabel Báez Díaz (Sra. Báez o la recurrente) mediante el recurso de epígrafe. Ésta nos solicita que revoquemos la resolución emitida por un oficial examinador de la Autoridad de Energía Eléctrica (A.E.E. o la recurrida), el 11 de agosto de 2002. A través de dicha resolución, la A.E.E. concluyó que la Sra. Báez había infringido las Reglas de Conducta 6 y 10 del Convenio Colectivo firmado entre la A.E.E. y la Unión de Empleados Profesionales Independiente (U.E.P.I.). En consecuencia, confirmó la formulación de cargos en contra de ésta por *"fijar avisos y circular hojas sin autorización previa"* y *"participar activamente en actos de campañas políticas"*.

En el presente recurso, examinaremos: (1) si las expresiones emitidas por la Sra. Báez están protegidas por el derecho de libertad de expresión, y (2) si incidió la A.E.E. al determinar que en este caso se configuraron los elementos constitutivos de violación a las referidas normas de conducta.

Por los fundamentos que se expresan a continuación, se confirma la resolución recurrida.

### I

Surge del expediente que el 23 de agosto de 2001, la A.E.E. le notificó a la Sra. Báez la formulación de cargos por infracción a las Reglas de Conducta 6, 10 y 29 de las normas aplicables a los empleados de dicha corporación pública. Dichas reglas establecían lo siguiente:

*"Regla de conducta 6: Fijar avisos y circular hojas sin autorización previa, no está permitido.*

*Regla de conducta 10: Participar activamente en actos o campañas políticas, no está permitido.*

*Regla de conducta 29: Ocultar o tergiversar los hechos o hacer declaraciones falsas, no está permitido."*

Específicamente, la A.E.E. le imputó a la Sra. Báez que:

*"[...] mientras usted, representando oficialmente a La Autoridad, evaluaba la solicitud de un cliente relacionada con la instalación de un poste cerca a su residencia, usted estableció una conversación con expresiones políticas en reacción a comentario [sic] que hizo el cliente relacionado con la persona que le estaba ayudando en su caso. En adición, a iniciativa propia, le entregó volante [sic] alusivo a actividad político partidista que se realizaría en días futuro [sic]."*

Inconforme con la anterior determinación, la Sra. Báez solicitó la celebración de una vista administrativa. Dicha vista se efectuó el 18 de junio de 2002 ante el Oficial Examinador, Lcdo. Agustín Mangual. Finalizada la misma, el Oficial Examinador dictó la resolución que hoy revisamos. A continuación transcribimos las determinaciones de hechos formuladas por dicho funcionario.

1. La querellada, desde hace cuatro (4) años, ocupa el cargo de Auxiliar de Ingeniería II en la AEE.

2. Un día laborable del mes de junio de 2001, el Ing. César González, Ingeniero de Distrito de la AEE en Arecibo, le encomendó a la querellada que le hiciera un estudio de campo en el Barrio Factor I de Arecibo, donde reside el Sr. José Villanueva Otero, quien había solicitado que se le diera un servicio de instalación de un poste con alumbrado eléctrico.

3. La querellada se personó a dicho sitio, y allí habló con el Sr. Villanueva Otero. Mientras hablaba con éste, el Sr. Villanueva Otero le dijo a la querellada que él había hablado con el Sr. Germán Rivera para que éste a su vez hiciera gestiones con el Representante a la Cámara Sr. Ramón Dasta para que éste le ayudara a conseguir el mencionado servicio y éste le dijo que el señor Dasta lo había ayudado. La querellada le dijo que Dasta no era el que autorizaba dicho servicio, que era ella la que determinaba si se le concedía el servicio o no. El Sr. Villanueva Otero le dijo que él no era del partido del señor Dasta. La querellada le dijo que *"si usted no es popular, yo lo invito a que asista a Bayamón el 4 de julio a una actividad que está anunciada."* Fue a su vehículo y regresó con un volante anunciando la actividad del 4 de julio de 2001. En dicho documento, apuntó su nombre y el teléfono de su oficina en la AEE de Arecibo [...] Además le dijo al Sr. Villanueva que lo llamara para coordinar con él sobre la transportación a dicha actividad política.

A la luz de las anteriores determinaciones, el Oficial Examinador concluyó que la Sra. Báez, en horas laborables invitó al Sr. Villanueva Otero a una actividad que ella consideraba que era política y que entendía que estaban excluidos los que fueran del Partido Popular. Por ello, resolvió que la Sra. Báez violentó lo dispuesto en las Reglas de conducta 6 y 10. ■

Insatisfecha, el 16 de octubre de 2002, la Sra. Báez acudió ante este Tribunal mediante recurso de revisión. Luego de varios trámites procesales, el 19 de agosto de 2003, un panel del extinto Tribunal de Circuito de Apelaciones emitió resolución desestimando el mismo por falta de jurisdicción. En esa ocasión, el panel de jueces entendió que la resolución emitida por el Oficial Examinador no constituia la decisión final de la agencia, pues ésta no cumplía con lo dispuesto en el convenio colectivo en cuanto a que los informes de los oficiales examinadores tenían que pasar al Director Ejecutivo para que los pusiera en vigor. En ausencia de una expresión por parte de dicho funcionario a tales fines, el panel de jueces resolvió que el tribunal carecía de jurisdicción para atender el recurso presentado por ser prematuro. ■

En vista de lo anterior, la A.E.E. acudió ante el Tribunal Supremo mediante recurso de *certiorari*. Así las cosas, el 8 de noviembre de 2006, dicho foro revocó la aludida resolución y devolvió el caso a este Tribunal para la continuación de los procedimientos. Esencialmente, resolvió que a tenor con lo resuelto en *Tosado Cortés v. AEE*, res. el 12 de agosto de 2005, **2005 J.T.S. 118**, y *AEE v. Rivera Fuentes*, res. el 16 de febrero de 2006, **2006 J.T.S. 34**, la determinación emitida por el Oficial Examinador en este caso goza de absoluta finalidad y por lo tanto, es revisable por este tribunal. Luego de emitirse el mandato por el Tribunal Supremo, el recurso fue asignado a este panel el 15 de diciembre de 2006.

De conformidad con lo anterior, revisamos los siguientes errores alegados por la recurrente.

1. Erró el Oficial Examinador al determinar que en el caso de la querellada se configuraron los elementos constitutivos de la violación de las normas de conducta 6 y 10 por alegada participación en actividades políticas en horas laborables en un caso en el cual no se identificó la naturaleza de una actividad político-partidista. Este error de por sí, o por su efecto combinado con los otros errores de derecho, violan en tal grado los derechos de la querellada que ameritan la revocación de la determinación administrativa recurrida.

2. Erró el Oficial Examinador al determinar que proceden cargos contra la querellada cuando las expresiones hechas por ésta están cobijadas por el derecho de libertad de expresión, no se probó que las mismas ocasionaran interrupción o menoscabo de los servicios de la Autoridad, ni daño a la persona de los abonados. Este error de por sí, o por su efecto, combinado con los otros errores de derecho, violan en tal grado los derechos de la querellada

9

que ameritan la revocación de la determinación administrativa recurrida.

3. Erró el Honorable Examinador al no tomar en cuenta la totalidad de las circunstancias en las cuales se ubicaban las expresiones de la querellada, circunstancias que constaban en el récord del caso. Estas circunstancias proveían el contexto dentro del cual se enmarcaban dichas expresiones de la querellada y al hacer una abstracción de las mismas se privó a la querellada de un elemento exculpatorio esencial y se violó su debido procedimiento de ley. Este error de por sí, o por su efecto combinado con los otros errores de derecho, violan a tal grado los derechos de la querellada que ameritan la revocación de la determinación administrativa recurrida.

Cabe señalar que el 27 de diciembre de 2006, concedimos treinta días a la recurrida para que fijara su posición respecto a los méritos del recurso de revisión presentado por la recurrente. Dicha parte ha comparecido oportunamente mediante escrito en oposición. Contando con el beneficio de su comparecencia, pasamos a resolver.

## II

Como cuestión de umbral, es menester destacar que en nuestra jurisdicción impera el principio que predica que a las determinaciones administrativas les cobija una presunción de regularidad y corrección. Tal y como lo ha reiterado el Tribunal Supremo de Puerto Rico en numerosas ocasiones, la revisión judicial de este tipo de dictamen se limita a determinar si la actuación de la agencia recurrida es arbitraria, ilegal o tan irrazonable que la misma constituye un abuso de discreción. *Otero Mercado v. Toyota de P.R.*, 163 D.P.R. ___ (2005), **2005 JTS 13**; *Pacheco Torres v. Estancias de Yauco S.E.*, 160 D.P.R. ___ (2003), **2003 JTS 150**; *E.L.A. et als. v. Malavé*, 157 D.P.R. 586 (2002); *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263, 280 (1999); *Franco v. Depto. de Educación*, 148 D.P.R. 703, 709 (1999).

La presunción de corrección que acarrea una decisión administrativa, deberá ser sostenida por los tribunales a menos que la misma sea derrotada mediante la identificación de prueba en contrario que obre en el expediente del caso. *E.L.A. v. P.M.C.*, 163 D.P.R. ___ (2004), **2004 JTS 202**; *A.R.P.E. v. J.A.C.L.*, 124 D.P.R. 858 (1989); *Henríquez v. C.E.S.*, 120 D.P.R. 194, 210 (1989); *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975). Ello debido a que los tribunales deben evaluar con deferencia las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. *Rivera Concepción v. A.R.P.E.*, 152 D.P.R. 116, 123-24 (2000); *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, 133 D.P.R. 521, 533 (1993); *Asoc. de Drs. Med. C. Salud V. v. Morales*, 132 D.P.R. 567, 589 (1993).

Al enfrentarse a una petición para revisar una determinación administrativa, el foro judicial deberá analizar si conforme al expediente administrativo: 1) el remedio concedido fue razonable; 2) las determinaciones de hechos están razonablemente sostenidas por la prueba; y 3) las conclusiones de derecho del organismo administrativo son correctas. *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 D.P.R. 269, 281 (2000); *Mun. de San Juan v. J.C.A., supra*, a las págs. 279-80; *Misión Industrial v. J.P. y A.A.A.*, 142 D.P.R. 656, 674 (1997); Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. Ed., Bogotá, Forum, 2001, págs. 533-36.

En cuanto a la revisión de las determinaciones de hechos de la agencia, la facultad revisora del foro judicial está limitada por la Sección 4.5 de la L.P.A.U., 3 L.P.R.A. § 2175. La citada sección establece que *"[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo."* *Rebollo v. Yiyi Motors*, 161 D.P.R. ___ (2004), **2004 JTS 4**; *Asoc. de Vec. H. San Jorge v. United*, 150 D.P.R. 70, 75 (2000); *Domínguez Talavera v. Caguas Expressway Motors, Inc.*, 148 D.P.R. 387, 397 (1999). En atención a consideraciones de debido proceso de ley, el expediente administrativo constituirá la base exclusiva para la decisión de la agencia y para la revisión judicial de la misma. *Comisionado v. Prime Life*, 162 D.P.R. ___ (2004), **2004 JTS 105**; *Torres v. Junta Ingenieros*, 161 D.P.R. ___ (2004), **2004 JTS 71**.

No obstante, el que los tribunales den un alto grado de deferencia a los dictámenes de las agencias no significa una renuncia a la función revisora del foro judicial. *Rivera Concepción v. A.R.P.E., supra*, a las págs. 122-23; *Del Rey v. J.A.C.L.,* 107 D.P.R. 348, 355 (1978). Los tribunales tienen el deber de proteger a los ciudadanos contra posibles actuaciones *ultra vires*, arbitrarias o inconstitucionales de las agencias. Las determinaciones de los foros administrativos no gozan de deferencia cuando éstos actúan de manera arbitraria, ilegal, irrazonable o ante la ausencia de prueba adecuada o cuando la agencia cometió error manifiesto en la apreciación de la misma. *Comisionado v. Prime Life, supra; Torres v. Junta Ingenieros, supra; O.E.G. v. Rodríguez,* 159 D.P.R. ___ (2003), **2003 JTS 51.**

Ahora bien, según lo dispone la citada Sección 4.5 de la L.P.A.U., *"[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal."* El razonamiento detrás de esta disposición, es que los tribunales gozan de peritaje en cuanto a las cuestiones legales por lo cual, en muchas ocasiones, no está presente el interés que justifica la deferencia al criterio administrativo. *San Antonio Maritime v. P.R. Cement Co.,* 153 D.P.R. 374 (2001); *Miranda v. C.E.E.,* 141 D.P.R. 775, 787 (1996).

No obstante la facultad que posee el foro judicial para revisar las conclusiones de derecho que emitan los foros administrativos, ello no quiere decir que los tribunales deben descartar livianamente las conclusiones de derecho formuladas por las agencias administrativas. La jurisprudencia interpretativa del Tribunal Supremo tiende a señalar que los tribunales deben evaluar con deferencia las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que éstas administran y, por ende, manejan a diario. Ello debido a que, por su familiarización con la materia, las agencias desarrollan un conocimiento especializado sobre ciertas cuestiones legales el cual no debe ser menospreciado y, por el contrario, abona a la correcta interpretación de determinados estatutos y reglamentos. *Martínez v. Rosado,* 165 D.P.R. ___ (2005), **2005 JTS 132;** *Asoc. de V. H. San Jorge v. United, supra; Rivera Rentas v. A & C Development,* 144 D.P.R. 450, 461 (1997).

De otro lado, en nuestra jurisdicción se ha reconocido que el derecho a la libertad de expresión se debe ejercitar a plenitud dentro de la más dilatada libertad. *Emp. Pur. Des., Inc. v. H.I.E.T.E.L.,* 150 D.P.R. 924 (2000). De igual forma, se ha expresado que el derecho a la libertad de expresión fue concebido, entre otras cosas, para facilitar el desarrollo pleno del individuo y estimular el libre intercambio y la diversidad de ideas, elementos vitales del proceso democrático. *Id.; Velázquez Pagán v. A.M.A.,* 131 D.P.R. 568 (1992).

Asimismo, en el caso normativo de *Pickering v. Board of Education,* 391 U.S. 563, 568 (1968), el Tribunal Supremo de los Estados Unidos reafirmó que no es permisible dentro de nuestro orden constitucional que un ciudadano tenga que renunciar al ejercicio de su derecho a la libre expresión, como condición para la obtención de un empleo público. Sin embargo, ello no quiere decir que este derecho sea absoluto ni que toda su conducta esté constitucionalmente protegida.

En *Velázquez Pagán v. A.M.A., supra,* nuestro Tribunal Supremo tuvo la oportunidad de delinear los contornos constitucionales de la expresión política en el empleo público. En esa ocasión, se cuestionó la constitucionalidad de varias disposiciones del Reglamento de Personal de la Autoridad Metropolitana de Autobuses (A.M.A.) y la Ley de Personal del Servicio Público, que prohibían que un empleado público utilizara su posición oficial para fines político-partidistas. Específicamente, el tribunal tuvo la ocasión de revisar una sentencia del Tribunal Superior que confirmó la suspensión de empleo y sueldo del Director del Negociado de Finanzas de la A.M.A., por razón de solicitarles a unos suplidores de dicha corporación pública fondos para un partido político.

Ante tal escenario, el Tribunal Supremo expresó lo siguiente:

*"En el caso particular de la reglamentación del Estado de las actividades político-partidistas de sus empleados, tanto el Supremo federal como esta Curia han convalidado ciertas restricciones que tienen el*

11

*propósito de aislar al personal de servicio público de la actividad partidista "de modo que la política no dañe el empleo ni lesione al empleado público." [Citas omitidas].*

*El principio rector de estas decisiones es que existe un interés apremiante del Estado en evitar que la administración pública no esté al servicio del "empleado público-político activo". [Citas omitidas]. Esta norma también ayuda a evitar que a los empleados públicos se les requiera, como condición de empleo y desde la plataforma de su trabajo, llevar a cabo actividades político-partidistas:*

*El Tribunal ha reconocido que el interés del gobierno por regular la conducta y la expresión de sus empleados es diferente a su interés por regular la conducta y la expresión de la ciudadanía en general. Son varias las razones. Primero, la influencia que ejercen los empleados del gobierno se expande y afecta cada vez más el quehacer cotidiano de los ciudadanos privados. Permitir que un empleado saque ventaja política por razón de su empleo desprestigia al gobierno y puede inducir a que se le falte el respeto a los funcionarios públicos. Segundo, la participación de los empleados públicos en la política puede constituir una amenaza al funcionamiento efectivo del gobierno. Es esencial que los empleados. gubernamentales implementen la voluntad del Congreso sin dejarse influir por las directrices de un partido político."* [Citas omitidas]. ■

Asimismo, el tribunal resumió la normativa aplicable en casos donde se alegue que el Estado está interfiriendo con el derecho de libre expresión de los empleados públicos. Así pues, nuestro más Alto Foro enunció que:

*"[a] la luz de esta jurisprudencia, podemos coincidir en que en la jurisdicción federal existen dos (2) categorías de expresiones de empleados públicos. La primera es aquélla que el empleado hace sobre un asunto de preocupación pública. La segunda es aquélla que sólo trata sobre asuntos de interés personal. La protección constitucional de la Primera Enmienda comprende la primera, pero no la segunda. [Citas omitidas]. Para hacer una determinación de cuáles son las expresiones protegidas, lo crucial entonces es decidir cuáles son los asuntos de preocupación pública. Esto será una determinación de derecho y no de hecho."* [Citas omitidas].

En *Connick v. Myers*, [...], se dijo que: *"[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."* **Además, este caso añade que se deberá tomar en consideración, el tiempo y lugar donde se hizo la expresión.** [Citas omitidas].

El último en esta progenie de casos siguientes a *Pickering v. Board of Education*, [...], lo es *RanKin v. McPherson*, [...], que aclara que lo determinante en el análisis del balance de *Pickering*, [...], y *Connick v. Myers*, [...] es la eficiencia en el lugar de trabajo. Reitera que los elementos de manera, tiempo, lugar y contexto son consideraciones relevantes para el buen balance de intereses. Por otra parte, añade un nuevo criterio a tomarse en cuenta al momento de hacer dicho balance; éste es la autoridad o grado de responsabilidad del empleado en su lugar de trabajo. *"The burden of caution employees bear with respect to the words they speak will vary with the extent of authority and public accountability the employee's role entails."* [Citas omitidas]. [Énfasis suplido]. ■

### III

A la luz del derecho antes enunciado, debemos resolver los errores alegados por la recurrente. Por estar estrechamente relacionados entre sí, habremos de discutirlos conjuntamente.

En esencia, nos corresponde resolver si las expresiones vertidas por la recurrente, incluyendo la entrega de un volante anunciando una actividad de celebración del 4 de julio, están protegidas por el derecho de libertad de expresión. En consecuencia, debemos resolver si la recurrida podía amonestar a la recurrente por dichas manifestaciones, y si en este caso se configuraron los elementos de violación a las reglas de conducta aludidas. Veamos.

En el caso que nos ocupa, las expresiones emitidas por la recurrente consistieron de una conversación que ésta sostuvo con un cliente que solicitó los servicios de la A.E.E. para que se instalara un poste de alumbrado eléctrico frente a su residencia, así como de la entrega de un volante que anunciaba una fiesta de celebración del 4 de julio. Según las determinaciones de hechos enunciadas por el foro administrativo, la aludida conversación estuvo matizada por comentarios de índole político-partidista. Así pues, en el transcurso de la conversación, el cliente le manifestó a la recurrente que, a pesar de que quien había hecho las gestiones para conseguir el mencionado servicio era un representante del Partido Popular Democrático (PPD), él no era simpatizante de dicho partido. Acto seguido, la recurrente le dijo al cliente "*'si usted no es popular, yo lo invito a que asista a Bayamón el 4 de julio a una actividad que está anunciada.' Fue a su vehículo y regresó con un volante anunciando la actividad del 4 de julio de 2001.*"

De otro lado, consta en autos que el referido volante fue admitido en evidencia. El mismo contiene un mensaje que lee: "*4 de julio, Plaza de las Fuentes, Estadio Hiram Bithorn, San Juan. 'Un pueblo honra su Nación'. Fiesta de Celebración 7pm- Coliseo Roberto Clemente. 3 de julio. Coliseo Roberto Clemente (interior) 7pm-1am. Donativo: $30.00. Actos Oficiales. Desfile/Parada. Show Artístico. Actividad para niños. Kioscos. Fuegos Artificiales.*" En el lado superior izquierdo aparece una nota escrita en manuscrito que lee: "*Mabel Báez. 816-6232. AEE*". ■

Ante dicho escenario, el Oficial Examinador concluyó que la recurrente había invitado al cliente a una actividad que ella entendía que era política, pues ésta manifestó que la misma excluia a los que fueran miembros del Partido Popular. Por lo tanto, el Oficial Examinador resolvió que la recurrente violó las normas de conducta 6 y 10, consistentes en participar en actos o campañas políticas y circular avisos sin autorización previa.

En nuestra jurisdicción, es un principio indiscutible que el gobierno tiene un interés reconocido de regular la conducta y la expresión de sus empleados. Ello, porque según vimos, las expresiones que despliegan dichos funcionarios inciden en el quehacer cotidiano de los ciudadanos y en la confianza que éstos depositan en el servicio público. Particularmente, en cuanto a la expresión político-partidista en el lugar de empleo, en *Hermina González v. Srio. del Trabajo,* 107 D.P.R. 667, 671-72 (1978), se estableció que "*la política pública prevaleciente en nuestro país [es la] de aislar el personal de servicio gubernamental de la actividad partidista de modo que la política no dañe el empleo ni lesione al empleado público.*" [Énfasis suplido].

Siguiendo esa misma filosofía, el 3 de enero de 2001, la Gobernadora de Puerto Rico, Hon. Sila M. Calderón, suscribió una orden ejecutiva "*para prohibir el uso de emblemas político partidistas durante horas laborables y mientras se rinden servicios a la ciudadanía*". Boletín Administrativo Núm. OE-2001-02. Mediante la misma, se reafirmó la política pública del gobierno de prohibir la propaganda político-partidista en el servicio público, al disponer que:

"*[t]odos los funcionarios y empleados del Gobierno del Estado Libre Asociado de Puerto Rico independientemente de su posición, función o clasificación o del tipo de nombramiento que ostenten, se abstendrán de realizar los siguientes actos dentro de las oficinas o dependencias bajo la jurisdicción del Gobierno del Estado Libre Asociado de Puerto Rico, durante sus respectivas jornadas de trabajo, las horas laborables del Gobierno o mientras se encuentren en gestiones oficiales:*

*a. El uso en su vestimenta o sobre su persona, en forma visible, de todo distintivo, emblema o logo, alusivo a cualquier partido u organización política, incluyendo, pero sin limitarse a cualquier distintivo, prendedores, botones y otros que contengan tales emblemas, durante horas laborables o mientras se preste servicio a la ciudadanía.*

*b. Colocar de forma visible, distintivos, emblemas o logos alusivos a cualquier partido u organización política, en las oficinas y dependencias gubernamentales.*

*c. Distribuir propaganda relacionada con un partido político o una contienda electoral durante horas laborables o mientras se presta servicio a la ciudadanía.*

*La violación a cualquiera de las disposiciones de esta Orden Ejecutiva se considerará causa suficiente para la imposición de las acciones disciplinarias correspondientes bajo las disposiciones de la Ley [...] de Personal del Servicio Público y cualquier otra reglamentación aplicable.* " [Énfasis suplido].

Asimismo, dicha Orden Ejecutiva dispuso, entre otras cosas, que:

*"[p]ermitir y difundir propaganda político-partidista dentro de las dependencias del Gobierno tiene un impacto negativo en la percepción general en cuanto a la objetividad del funcionamiento de las agencias, ya que puede dar la impresión que los servicios se prestan a base de favoritismo y cohibir los reclamos legítimos de ayuda si la persona necesitada tiene una preferencia política distinta a la del servidor o funcionario público.* "

El presente caso, requiere que hagamos un balance entre el interés apremiante del gobierno de mantener el servicio público limpio de identificaciones político-partidistas, y el derecho de expresión de la recurrente. Para ello, entendemos prudente utilizar el estándar de revisión formulado en *Hernández v. J. Apel. Sist. Educ. Pub.*, 147 D.P.R. 840, 848 (1999). Allí se expresó lo siguiente:

*"[...] primero, como cuestión de derecho, debemos determinar si la expresión es sobre un asunto de interés público. De ser en la negativa, no se analizan las razones para la acción disciplinaria, ya que '[c]uando un empleado público se expresa, no como un ciudadano sobre asuntos de interés público, sino como un empleado sobre asuntos que son únicamente de interés personal' [...] por lo general no está implicada la libertad de expresión. [Citas omitidas]. Segundo, de estar implicado un asunto de interés público, el empleado debe demostrar, como cuestión de hecho, que su expresión fue un factor substancial en la decisión del patrono. [Citas omitidas]. Tercero, de haber sido un factor substancial, es preciso analizar entonces si la acción disciplinaria estuvo justificada y debe prevalecer. En esa tarea es menester sopesar los intereses del empleado como ciudadano particular en expresarse libremente sobre dichos asuntos, y del Estado de promover la mejor eficiencia y productividad en el servicio [...]".* [Citas omitidas].

Para determinar si la expresión censurada está protegida por el derecho a la libertad de expresión, por razón de que existe un interés público, el Tribunal Supremo federal ha expresado *"[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Rankin v. McPherson,* 483 US 378, citando a *Connick v. Myers,* 461 US 138, 146.

En este caso, las determinaciones de hechos enunciadas por el Oficial Examinador demuestran que las expresiones emitidas por la recurrente se hicieron durante horas laborables y se dirigieron a un cliente de la A.E.E. que procuraba un servicio. Asimismo, dicho funcionario determinó que las expresiones vertidas por la recurrente eran de índole político-partidista. A la luz de ese contexto, debemos resolver si dichas expresiones perseguían difundir un mensaje de interés público.

En *Rankin v. McPherson, supra,* el Tribunal Supremo federal se enfrentó a unas expresiones emitidas por una empleada de *"data-entry"*, cuando después de escuchar una noticia sobre un atentado a la vida del Presidente de los Estados Unidos, ésta manifestó *"If they go for him again, I hope they get him."* Ante esos hechos, el tribunal resolvió que las expresiones de la empleada estaban protegidas por la Primera Enmienda, toda vez que se trataba de un mensaje de interés público y que en el contexto en el que se dieron las mismas, no afectaron el servicio que ofrecía la oficina del condado para la cual trabajaba. En ese caso, las expresiones fueron dirigidas a un compañero de trabajo, dentro de una oficina que no tenía acceso al público; además, la empleada no utilizaba uniforme que la identificara como empleada de la oficina y las funciones que realizaba eran de tipo clerical.

14

El caso de autos es claramente distinguible de los hechos de *Rankin*. En este caso, el contenido del mensaje de la recurrente claramente respondía a un interés político-partidista. Tal interés quedó evidenciado en la conversación que la recurrente sostuvo con el Sr. Villanueva Otero, al indicar que la susodicha actividad excluía a los del Partido Popular. Así pues, lejos de tratarse de un mensaje de interés público, sus expresiones perseguían un interés personal de circular un mensaje proselitista en horas laborables. Por tanto, tratándose de un asunto puramente personal, el reclamo constitucional invocado por la recurrente no procede.

Tampoco podemos pasar por desapercibido el hecho de que el mensaje se dirigió expresamente a un cliente que solicitó un servicio y a quien la recurrente le hizo creer que tenía cierta autoridad para autorizar si el servicio se concedía o no. Por consiguiente, resolvemos que la actuación de la A.E.E. al amonestar a la recurrente por violación a las normas de conducta de la agencia, estuvo justificada. Así pues, el contexto en el que se dieron las susodichas expresiones permite concluir que la recurrente incurrió en la conducta vedada por las referidas Reglas 6 y 10.

Por último, debemos recordar que las decisiones administrativas poseen una presunción de corrección. En este caso, la recurrente no nos ha demostrado que en la determinación del oficial examinador haya mediado abuso, arbitrariedad o error manifiesto. Luego de haber examinado detenidamente la transcripción de la vista argumentativa, resolvemos que las conclusiones emitidas por el Oficial Examinador están sustentadas con evidencia sustancial. Por tanto, en ausencia de criterios que nos muevan a revocar el dictamen recurrido, confirmamos.

### IV

Por los fundamentos que anteceden, se confirma la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones